UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY C.,[1]

      Plaintiff,                      Case No. 2:23-cv-10825

                                                District Judge Mark A. Goldsmith

                                                Magistrate Judge Kimberly G. Altman

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

I.      Introduction

    This is a social security case.  Plaintiff Gregory C. brings this action under 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Both parties have filed summary judgment motions, (ECF Nos. 8, 10), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B), (ECF No. 7).

---

[1] Consistent with guidance regarding privacy concerns in Social Security cases by the Judicial Conference Committee on Court Administration and Case Management, this district has adopted a policy to identify plaintiffs by only their first names and last initials.  *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's motion, (ECF No. 8), be **DENIED**; the Commissioner's motion, (ECF No. 10), be **GRANTED**; and the decision of the Administrative Law Judge be **AFFIRMED**.

## II.    Background

### A.    Procedural History

Plaintiff is 52 years old and filed an application for disability benefits under Title II of the Social Security Act on July 21, 2020, alleging a disability onset date of January 1, 2011.  (ECF No. 4-1, PageID.27).  He is a college graduate, holds a bachelor's degree in business administration, and has past relevant work as a user support analyst.  (*Id.*, PageID.37-38, 64).  In his application, Plaintiff alleges disability due to high blood pressure, high cholesterol, urological issues, obesity, obsessive compulsive disorder (OCD), anxiety, and depression.  (*Id.*, PageID.98).  His application was denied initially on March 24, 2021, and upon reconsideration on September 24, 2021.  (*Id.*, PageID.27).  Plaintiff then submitted a written request for a hearing before an Administrative Law Judge (ALJ) and his hearing was held before ALJ David Mason.  (*Id.*).

Due to the COVID-19 pandemic, Plaintiff appeared and testified by online video at the hearing, as did a vocational expert.  (*Id.*, PageID.47-48).  Plaintiff was represented by counsel and offered the following testimony:

2

- Plaintiff testified that he worked for Electronic Data Systems until December 2010 and then performed no work for the next two months but still received wages until being laid off in February 2011.  (*Id.*, PageID.52, 54-55).

- He resided alone, suffered from agoraphobia, had difficulty leaving his apartment, and had not looked for work in the last six years.  (*Id.*, PageID.57).

- He also testified that he drove two to three times per week, attended anxiety support group meetings, went to the movies, dined out, used social media, and visited his sister twice a month.  (*Id.*, PageID.58-59).

- He stated he experienced panic attacks, anxiety, fatigue (up to eighteen hours of sleep a day), and had some problems with personal grooming, but he denied experiencing pain due to his anxiety or other mental health issues. (*Id.*, PageID.58-63).

- While he claimed some difficulty in walking or standing for more than twenty minutes, he also testified that he could lift 75 pounds.  (*Id.*, PageID.65-66).

On May 24, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (*Id.*, PageID.39).  On February 9, 2023, the Appeals Council denied Plaintiff's request for review, (*id.*, PageID.13), making the ALJ's decision the final

3

decision of the Commissioner.  Plaintiff timely filed for judicial review of the final

decision.  (ECF No. 1).

### B.     Medical Evidence

The medical records[2] reflect that Plaintiff was treated at Livonia Outpatient

Clinic on September 6, 2008.  (ECF No. 4-1, PageID.688).  He was seen by Victor

Ajuni, M.D. and reported a depressed mood, anxiety, and obsessive checking.  (*Id.*,

PageID.689).  Plaintiff also reported that he avoided close, emotional relationships;

was involved in lonely, solitary hobbies; is becoming used to being alone; and had

a bleak outlook on life.  (*Id.*).  His history included depression but no history of

suicide attempts.  Dr. Ajuni noted that Plaintiff was also being treated by Dr. Lisa

Elrom (Dr. Elrom) and that her concurrent evaluation contained more details;

however, no evaluation from Dr. Elrom from that time period was included in the

medical records.  (*Id.*).

On October 25, 2008, Dr. Ajuni reported that Plaintiff recently increased his

dose of Prozac and Plaintiff reported a somewhat improved mental state.  (*Id.*,

PageID.687).  On January 10, 2009, Dr. Ajuni noted no increase in medication

dose yet Plaintiff reported improvements in his OCD.  (*Id.*, PageID.685).  On

February 21, 2009, Plaintiff reported to Dr. Ajuni that an increased medication

---

[2] Plaintiff's complete medical record evidence includes records that predate his
disability onset date of January 1, 2011, and date last insured of December 31,
2016, and provide background on Plaintiff's condition.

4

dosage was causing him fatigue but that his OCD symptoms were "much better" and "almost a non issue" due to a combination of therapy and medication. (*Id.*, PageID.683). On May 23, 2009, Plaintiff reported feeling less tired and anxious. (*Id.*, PageID.681). On November 21, 2009, Dr. Ajuni noted that Plaintiff reported minimal OCD symptoms. (*Id.*, PageID.675).

On February 16, 2010, Plaintiff was seen by Dr. Bruce Terrio (Dr. Terrio) and diagnosed with depression, (*Id.*, PageID.311), and on April 16, 2010, Dr. Terrio's also diagnosed Plaintiff with anxiety. (*Id.*, PageID.355). Then, on April 22, 2010, the Eastwood Clinics' intake assessment noted that Plaintiff reported various signs and symptoms associated with OCD and social anxiety, including focus and concentration deficits. (*Id.*, PageID.377-378). But on May 20, 2010, Dr. Terrio noted that Plaintiff had no concerns related to his medical condition. (*Id.*, PageID.354). Afterwards, on August 20, 2010, the Eastwood Clinics' treatment plan noted Plaintiff had mood lability (rapid exaggerated change), and anxiety and avoidance behavior; however, he also had decreased OCD symptoms and denied excessive rumination or repetitive behavior. (*Id.*, PageID.376).

On May 25, 2011, Plaintiff told the Eastwood Clinics therapist that he was anxious because of the death of his mother, (*id.*, PageID.374), and on July 9, 2012, he reported increased isolation, (*id.*, PageID.372). Subsequently, on October 10, 2012, Dr. Terrio's diagnoses of Plaintiff included OCD, major depressive disorder,

and social anxiety disorder.  (*Id.*, PageID.344).  At that time, his prescribed dosage of Effexor was increased.[3]  (*Id.*).  Later, on February 18, 2013, Dr. Terrio noted Plaintiff's examinations were within normal limits.  (*Id.*, PageID.302-303).  Then, on February 25, 2013, Plaintiff reported to Dr. Kathryn Baker (Dr. Baker) that his OCD was under reasonable control and was not functionally impairing him.  (*Id.*, PageID.599).  Plaintiff was taking Effexor and Luvox[4] daily, (*id.*, PageID.600), and reported that his depression and anxiety, rather than his OCD, were the issues most significantly impacting his ability to function.  (*Id.*, PageID.599).

Dr. Baker's new patient evaluation reflects that Plaintiff's symptoms began to worsen after he was laid off from his employer in February 2011.  (*Id.*).  Since that time, he has been isolating in his apartment, "sleeping and watching TV all day."  (*Id.*).  Additionally, Plaintiff reported brief self-injurious behaviors during 2010 (slapping and hitting himself); however, he had not engaged in such behaviors recently.  (*Id.*, PageID.600).  At the February 2013 appointment, Dr. Baker noted Plaintiff was well-appearing with no acute distress; no gait or postural

---

[3] Effexor is a drug used to treat depression, general anxiety disorder, social anxiety disorder, and/or panic disorder.  *See* https://www.mayoclinic.org/drugs-supplements/venlafaxine-oral-route/side-effects/drg-20067379?p=1 (last visited July 20, 2024).

[4] Luvox is a selective serotonin reuptake inhibitor (SSRIs) used to treat obsessive compulsive disorder.  *See* https://www.mayoclinic.org/drugs-supplements/fluvoxamine-oral-route/description/drg-20066874 (last visited July 20, 2024).

6

abnormalities; and had adequate eye contact, a mild lisp, depressed mood, and anxious and restricted affect, but otherwise had a normal mental status examination. (*Id.*, PageID.600-601).

On April 30, 2013, Plaintiff's Eastwood Clinics' records show he was taking his prescribed medications and as a result, he was facing his fears more readily. (*Id.*, PageID.369). For example, Plaintiff experienced decreased anxiety and was now able to go into stores, even large ones, to shop. (*Id.*). He also had more self-confidence, was successfully following up with daily tasks, and had increased motivation. (*Id.*). Thereafter, on August 6, 2013, the Eastwood Clinics' records state that he was still taking his prescribed medications and continued to experience decreased anxiety, was able to go into stores to shop, and was successfully following up with daily tasks. (*Id.*, PageID.368). Soon after, on October 29, 2013, the Eastwood Clinics' records again note that he was taking his prescribed medications and was facing his fears more readily, completing more tasks, and being social with family. (*Id.*, PageID.367).

On May 15, 2014, Plaintiff told the Eastwood Clinics therapist that he had lower OCD issues and was doing good, feeling stable, and had reduced anxiety. (*Id.*, PageID.365). On June 19, 2015, Plaintiff saw Dr. Steven Klein (Dr. Klein) and was diagnosed with depression, anxiety, and OCD. (*Id.*, PageID.392). At the visit, Plaintiff was anxious and had pressured speech, but otherwise his mental

7

status was normal.  (*Id.*, PageID.394).  On July 16, 2015, he went back to Eastwood Clinics and reported a lack of motivation and guilty feelings.  (*Id.*, PageID.362).  Later, on April 6, 2016, Plaintiff again sought treatment at Eastwood Clinics and reported he began a fitness club membership in January.  (*Id.*, PageID.768).  His physical and mental status examinations were also within normal limits and he was still improving.  (*Id.*, PageID.769-770).

On April 22, 2016, Plaintiff went back to Dr. Klein and his physical and mental status examinations were again within normal limits.  (*Id.*, PageID.407). He was oriented with appropriate mood and affect with normal memory and no acute distress.  (*Id.*).  On June 9, 2016, Dr. Klein conducted more physical and mental status examinations and Plaintiff's results were within normal limits.  (*Id.*, PageID.418-419).  He was oriented with an appropriate mood and affect with normal memory, insight, and judgment without acute distress.  (*Id.*, PageID.419). Thereafter, on October 5, 2016, the Eastwood Clinics noted he was stable and his mental status examination was within normal limits.  (*Id.*, PageID.765-767).  Then, on November 23, 2016, the Eastwood Clinics noted Plaintiff reported feeling sad, anxious, and depressed, and that this represented a slight worsening of his symptoms; however, he was functionally intact, and his mental status examination was within normal limits.  (*Id.*, PageID.762-764).  Plaintiff's condition was also stable.  (*Id.*, PageID.764).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three: If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is conclusively
> presumed to be disabled regardless of age, education, or work
> experience.
>
> Step Four: If the claimant is able to perform his or her past relevant
> work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the

9

claimant can perform, in view of his or her age, education, and work
experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the

claimant throughout the first four steps. . . . If the analysis reaches the fifth step

without a finding that claimant is not disabled, the burden transfers to the

[Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110

(6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff was

not disabled under the Act. At Step One, the ALJ found that Plaintiff had engaged

in substantial gainful activity since January 1, 2011, the alleged onset date. (ECF

No. 4-1, PageID.30). During the hearing, Plaintiff testified that he was paid wages

in the first two months of 2011, received a severance package upon termination,

and reported to the office each day but did no work.[5] (*Id.*, PageID.51-55). The

ALJ had discretion to end the inquiry at this step and did in fact deny Plaintiff's

claim at Step One by finding the earnings received exceeded the substantial gainful

---

[5] During the hearing, the ALJ did not ask, and the Plaintiff did not offer, a specific
breakdown of the $14,797.92 earnings in 2011 to determine what amount
constituted wages versus severance pay. The ALJ left unexplained why he
categorized the entire amount as wages and then calculated an average monthly
earnings for the entire year. (*Id.*, PageID.30).

activity threshold. (*Id.*). However, because the ALJ continued his analysis to afford Plaintiff an opportunity for a full review of the evidence in the record, (*id.*, PageID.30), the undersigned will review his entire decision. At Step Two, the ALJ found that Plaintiff had the severe impairments of anxiety, depression, obsessive compulsive disorder, agoraphobia (fear of places and situations), ureteral stricture (narrowing of tube connecting kidney to bladder), and obesity. (*Id.*). The ALJ also found that Plaintiff had the non-severe impairments of hypertension, gout (form of arthritis), hypercholesterolemia (high cholesterol), hyperlipidemia (high levels of fat in blood), and dysuria (painful urination). (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met or medically equaled a listed impairment. (*Id.*, PageID.30-32).

The ALJ then assessed Plaintiff's residual functional capacity (RFC), concluding that he was capable of performing a full range of work at all exertional levels, except that he:

> can perform simple routine and repetitive tasks (frequently), but not at a production rate pace (e.g., assembly line work), involving only simple work-related decisions with few, if any, workplace changes. The claimant requires work with brief and superficial contact with co-workers and supervisors, but no contact with the general public. He requires one additional five-minute bathroom break. Lastly, the claimant requires no teamwork or work with tandem tasks.

(*Id.*, PageID.32-33).

At Step Four, the ALJ found that Plaintiff was unable to perform any past

11

relevant work. (*Id.*, PageID.37). But in considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the jobs of floor waxer (118,000 jobs nationally), routing clerk (105,000 jobs), and hotel housekeeper (220,000 jobs), which exist in significant numbers in the national economy. (*Id.*, PageID.38). As a result, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.*, PageID.39).

## IV. Standard of Review

A district court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g). Although a court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one. Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224-25 (6th Cir. 2019); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g).  The Supreme Court has explained:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations.  And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.  Substantial evidence, this Court has
> said, is more than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009))).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial.  The court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (internal quotation marks and citation omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration (SSA)] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotation marks and citations omitted).

## V.    Analysis

### A.    Parties' Arguments

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he (1) failed to properly evaluate Dr. Elrom's medical opinions under current regulations, and (2) erred in formulating Plaintiff's RFC based on the ALJ's own interpretation of the record evidence.  In response, the Commissioner argues that both findings were supported by substantial evidence.

### B.    Opinion Evidence

#### 1.    Legal Standard

When evaluating a medical opinion, the ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."  20 C.F.R. §

14

404.1520c(b).  The ALJ evaluates the persuasiveness of the medical opinions and prior administrative medical findings by utilizing the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  § 404.1520c(c).  Supportability and consistency are the most important factors and the ALJ must explain how he considered these factors in his decision.  § 404.1520c(b)(2).

2.    Medical Opinions of Record

Regarding Plaintiff's mental RFC, the ALJ considered the opinion of Plaintiff's treating physician, Dr. Elrom.  (ECF No. 4-1, PageID.35).  The ALJ found Dr. Elrom's medical opinion unpersuasive for three reasons.  (*Id.*).  First, Dr. Elrom's opinion came over five years after Plaintiff's date last insured.  (*Id.*).  Second, her opinion relied heavily on Plaintiff's subjective report of symptoms and limitations.  (*Id.*).  Lastly, and most importantly, her opinion was not consistent with Plaintiff's own reporting of his ability to perform a variety of activities.  (*Id.*).

On March 30, 2022, Dr. Elrom was consulted to examine Plaintiff and provided a mental RFC assessment.  (*Id.*, PageID.737).  She opined that Plaintiff had no functional restrictions in his understanding and memory.  (*Id.*, PageID.738-740).  She also opined that Plaintiff had mild restrictions in maintaining attention and concentration for extended periods, but had the ability to ask simple questions and request assistance.  (*Id.*).  She further opined that Plaintiff had moderate

15

limitations in his ability to maintain socially appropriate behavior and to adhere to basic standards of cleanliness; and in his ability to be aware of normal hazards and take appropriate precautions. (*Id.*). Dr. Elrom also stated that Plaintiff had marked limitations in his ability to interact appropriately with the general public and in his ability to set realistic goals or make plans independently. (*Id.*). Lastly, Dr. Elrom found Plaintiff to have extreme limitations in:

- his ability to perform activities within a schedule, maintain regular attendance, and be punctual;

- his ability to sustain an ordinary routine without special supervision; his ability to work in coordination or proximity to others without being distracted;

- his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- his ability to accept instructions and respond appropriately to criticism from supervisors;

- his ability to respond appropriately to changes in the work setting;

- his ability to travel to unfamiliar places or use public transportation; and

- his ability to tolerate normal levels of stress.

(*Id.*). She also opined that:

[Plaintiff] does not exhibit cognitive deficits.  [He] [c]an mentally carry out detailed directives.  [Plaintiff] severely lacks in motivation to attend to basic hygiene needs.  [His] [a]nxiety is significant [in] that it prevents him from acting upon simple tasks.  [He] [w]ill procrastinate on things like taking initiative to get urgent repairs done to family house or own apartment.  [He] [s]leeps most of [the] day.  [He has an] [o]verall high level of avoidance.

(*Id.*).

The ALJ found that Dr. Elrom's opinion was contradicted by the overall medical record, which showed that Plaintiff had a number of physical and mental status examinations over a long period of time that were all within normal limits. (*Id.*, PageID.33-35).  The ALJ further explained that Dr. Elrom's findings on Plaintiff's limitations contradicted Plaintiff's self-reported activities and abilities such as, residing alone, managing his own finances, following instructions, following sports teams, preparing full meals, driving, doing laundry, and cleaning. (*Id.*, PageID.35).  Plaintiff also testified at the hearing that he can grocery shop, attend group meetings, visit with his sister, play board games, dine out, and read for enjoyment.  (*Id.*)  Accordingly, the ALJ found Dr. Elrom's opinion unpersuasive.  (*Id.*).  In short, he stated that Plaintiff's daily activities and abilities showed greater functioning than Dr. Elrom's opinion, that his overall treatment records were not consistent with the level of limitations in the opinions, and that the records consistently noted improvement of symptoms from medication.  (*Id.*).

3.    Discussion

Under § 404.1520c(b)(2), the ALJ must specifically address the factors of supportability and consistency.  Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  § 404.1520c(c)(1).  Consistency means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  § 404.1520c(c)(2).  Further, the ALJ is required to provide a "sufficiently detailed articulation of application of those factors in which the ALJ must show their work, i.e., to explain in detail how the factors actually were applied to each medical source." *Huizar v. Comm'r of Soc. Sec.*, 610 F. Supp. 1010, 1020 (E.D. Mich. 2022) (cleaned up).  In other words, the regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021).

Plaintiff argues that the ALJ erred by rejecting Dr. Elrom's medical opinion

and basing his RFC assessment on the ALJ's review of the overall medical record. (ECF No. 8, PageID.827-836).  He also argues that the ALJ failed to adequately discuss the supportability of the ALJ's RFC assessment.  (*Id.*).

As noted above, the ALJ is only *required* to discuss supportability and consistency, as he did here.  The other factors are still to be considered, but in the absence of an egregious error, a decision should not be remanded for failing to discuss these factors.  Here, the ALJ adequately discussed the supportability and consistency of Dr. Elrom's opinion, finding that "the physician relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept as true most, if not all, of what the claimant reported uncritically." (*Id.*, PageID.35).  His finding that it was not persuasive is supported by substantial evidence.  As evidence that the Dr. Elrom's opinion was inconsistent with the record, the ALJ accurately summarized the record in his decision, noting the medical record evidence showed medication treatment to be fairly effective in controlling Plaintiff's symptoms.  (*Id.*, PageID.36).  The ALJ also noted that while Plaintiff claimed totally disabling symptoms, no treatment record showed any restrictions placed on Plaintiff by his treating physicians during the relevant time period.  (*Id.*, PageID.37).  Instead, Plaintiff showed improvements in mood and affect generally and from medications and participated in activities such as exercising, grocery shopping, household cleaning, reading, and cooking.  (*Id.*,

19

PageID.33-37).

Plaintiff might wish "the ALJ had interpreted the evidence differently."

*Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7

(S.D. Ohio May 20, 2016), *report and recommendation adopted*, 2016 WL

4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017).  But

the law prohibits the Court from re-weighing the evidence and substituting its

judgment for the ALJ's.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411,

414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244,

246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does

not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide

questions of credibility, or substitute its judgment for that of the ALJ.")).  Because

the ALJ properly evaluated and discussed the supportability and consistency of Dr.

Elrom's opinions, the ALJ has satisfied the requirements of the regulations.  *See* 20

C.F.R. § 404.1520c(b)(2).

Here, the ALJ extensively reviewed the medical record evidence, including

the disability determination services (DDS) physicians' records, in which Dr.

Jennie Rose stated "[t]here is very limited [medical record evidence] for [the

relevant] time period, unable to evaluate any functional limitations."  (*Id.*,

PageID.91).  Separately, Dr. Barbara Jones Smith opined that "[a]lthough there is

[medical record evidence] for [the relevant] time period, there is limited adaptive

functioning information in file to determine the level of impairment due to medical history symptoms." (*Id.*, PageID.93). After Plaintiff filed for reconsideration of the disability determination, Dr. Dale Blum reviewed the available medical record evidence and found that the "[e]vidence received for the [date last insured] time period is not sufficient to assess [Plaintiff's] functional abilities." (*Id.*, PageID.101). After reviewing these determinations, the ALJ noted "the DDS physicians' found there is insufficient evidence to evaluate the claim" and found the DDS opinions "somewhat persuasive, as to the time authored; however . . . evidence received at the hearing level shows there is evidence to make a decision on this claim." (*Id.*, PageID.35).

Plaintiff cites persuasive, but not binding, authority from a minority of courts in this district to argue that an RFC finding must be based on a medical opinion. (*Id.*, PageID.828-829). The undersigned is not convinced for two reasons. First, the Sixth Circuit has repeatedly rejected this proposition, most recently in *Mokbel-Aljahmi*, where it found no error when the ALJ "gave no weight to nearly all the physicians' opinions . . . [because they were] inconsistent with the physicians' own notes" and further held:

> [w]e have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ. *See Shepard v. Comm'r of Soc. Sec.*, 705 Fed. Appx. 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that

[the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence").

732 F. App'x 395, 401-2 (6th Cir. 2018).  Second, the cases Plaintiff cites are distinguishable from this case, as they either address instances where the ALJ had no medical opinion evidence regarding RFC whatsoever, or the ALJ did not sufficiently explain the tie between the available evidence and the RFC's functional limitations, not instances where an ALJ properly discounted or rejected certain medical opinions.  *See Schipper v. Comm'r of Soc. Sec.*, No. CV 19-12163, 2020 WL 4578709, at *6 (E.D. Mich. Apr. 7, 2020), *report and recommendation adopted*, 2020 WL 305591 (E.D. Mich. June 8, 2020) (medical records contained no RFC assessment); *McCaig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 WL 4211047, at *8 (E.D. Mich. Sept. 21, 2017) (certain RFC limitations contradicted others—stooping, crouching, kneeling allowed but no crawling; stair climbing allowed despite claimant's lack of balance, use of cane, and fatigue/shortness of breath due to congestive heart failure—and limitations unsupported by available evidence); *Charbonneau v. Comm'r of Soc. Sec.*, No. 2:18-CV-10112, 2019 WL 960192, at *17 (E.D. Mich. Jan. 11, 2019), *report and recommendation adopted*, 2019 WL 952736 (E.D. Mich. Feb. 27, 2019) (RFC limitations unsupported by available evidence); *Hightower v. Comm'r of Soc. Sec.*, No. CV 19-13433, 2020

WL 11563085, at *6 (E.D. Mich. Nov. 20, 2020), *report and recommendation adopted*, No. 19-13433, 2021 WL 4479218 (E.D. Mich. Sept. 30, 2021) (no medical opinion describing claimant's functional limitations as an adult).

Here, the central issue is whether the ALJ properly rejected Dr. Elrom's opinion regarding Plaintiff's RFC.  Importantly, the ALJ's rejection of Dr. Elrom's opinion and finding somewhat persuasive other physicians' opinions does not mean the ALJ interpreted the raw medical data himself.  Plaintiff concedes this point and acknowledges that there is no "'brightline rule that medical opinions must be the building blocks of the RFC." (*Id.*, PageID.829).  The undersigned agrees.  In fact, to do otherwise would invalidate the duty of an ALJ to evaluate the evidence and formulate an RFC.  *See Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 339 (6th Cir. 2018) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide.") (quoting *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x. 638, 640 (6th Cir. 2016) (internal quotations and other citations omitted)).

Further, as to the consistency of Dr. Elrom's opinion with Plaintiff's testimony, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 4-1, PageID.37).  For reasons that will be examined below, this finding is also

23

supported by substantial evidence, and as such, the inconsistency of the ALJ's findings with Plaintiff's testimony is not cause for remand.

### C.     Subjective Symptom Evaluation

#### 1.     Standard

Plaintiff challenges the ALJ's consideration of Plaintiff's subjective allegations.  Under the Social Security Regulations (SSR), the ALJ was required to follow a two-step process when evaluating Plaintiff's subjective symptoms.  20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  Under SSR 16-3p, an ALJ must analyze the consistency of Plaintiff's statements with the other record evidence, considering his testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in that regulation. This analysis and the conclusions drawn from it—formerly termed a "credibility" determination—can be disturbed only for a "compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (explaining that SSR 16-3p merely eliminated "the use of the word 'credibility' . . . to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'").

The ALJ must first confirm that objective medical evidence of the underlying condition exists, and then determine whether that condition could reasonably be expected to produce the alleged subjective symptom(s), considering

24

other evidence, including: (1) daily activities; (2) location, duration, frequency, and intensity of the symptom(s); (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication received; (6) any means used to relieve the symptom(s); and (7) other factors concerning functional limitations.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

The ALJ accurately summarized Plaintiff's testimony, noting Plaintiff's alleged long periods of sleep; crying spells; anxiety, memory, and concentration deficits; problems with personal care, and struggles with OCD and depression. (ECF No. 4-1, PageID.33-37).  As noted above, the ALJ concluded that while Plaintiff's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical and other evidence of record.  (*Id.*, PageID.37).

### 2.    Discussion

The analysis here largely echoes that of the previous section of this opinion. While Plaintiff often presented with OCD, anxiety, and a depressed mood, his mental status examinations were consistently within normal limits.  (*See* ECF No. 10, PageID.853; ECF No. 4-1, PageID.34, 384-385, 393-394, 407, 419, 763-770). Plaintiff struggled with OCD, social anxiety disorder, and avoidance behavior, but his condition steadily improved with medication.  (*See* ECF No. 4-1, PageID.32-37, 384, 394, 400, 407, 419, 601-602, 766-767, 769-770, 786, 788-798).  Dr.

Elrom's assessment of Plaintiff's extreme limitations in mental functioning such as sustained concentration and persistence; social interaction; and adaptation are contradicted by Plaintiff's testimony regarding his daily activities and abilities. (*Compare id.*, PageID.51-74, *with* PageID.737-740).

Taking Plaintiff's impairments into account, the ALJ found Plaintiff could perform a full range of work at all exertional levels but with the following non-exertional limitations: (1) performing simple routine and repetitive tasks (frequently), but not at a production rate pace (e.g., assembly line work), involving only simple work-related decisions with few, if any, workplace changes, and (2) only work requiring brief and superficial contact with co-workers and supervisors, but no contact with the general public. (*Id.*, PageID.32). Ultimately, Plaintiff bears the burden of showing that he is limited beyond the RFC. *See* 20 C.F.R. §§ 404.1512, 416.912; *Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). The undersigned agrees with the Commissioner that Plaintiff has not met this burden, but instead asks the Court to impermissibly reweigh the evidence. *Mullins v. Sec'y of Health & Hum. Servs.*, 680 F.2d 472 (6th Cir. 1982). Instead, the undersigned finds that the ALJ's opinion is supported by substantial evidence based on the record before the Court, which is all that is required to affirm the ALJ's decision. *See Blakley*, 581 F.3d at 406 (holding that "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial

evidence in the record that would have supported an opposite conclusion."
(internal quotations omitted)).

Plaintiff also contends that the ALJ erred by not adequately addressing his
agoraphobia when the ALJ formulated Plaintiff's RFC. (ECF No. 8, PageID.831-
834). This argument is without merit because the ALJ evaluated Plaintiff's
impairments and found that Plaintiff's agoraphobia was a severe impairment. (*Id.*,
PageID.30). The ALJ then specifically limited Plaintiff's RFC to work requiring
"brief and superficial contact with co-workers and supervisors but no work with
the general public." (*Id.*, PageID.32). The RFC also limited Plaintiff to no
teamwork or work with tandem tasks. (*Id.*).

Plaintiff cites *Hubler* for the proposition that "[p]roviding an assessment
about how a claimant might be able to perform once he is at work does not
necessarily address whether that person will even be able to leave the house to go
to work". *See Hubler v. Comm'r of Soc. Sec.*, No. 3:21-CV-01384, 2022 WL
2441848, at *11 (N.D. Ohio June 3, 2022), *report and recommendation adopted
sub nom. Hubler v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2439604 (N.D. Ohio
July 5, 2022). But Plaintiff's reliance on *Hubler* is misplaced because in that case,
the claimant suffered from agoraphobia and reportedly did not leave his house for a
two-year period, even going so far as to attend doctor's appointments online.
*Hubler*, 2022 WL 2441848, at *9. Here, Plaintiff testified that in spite of his

agoraphobia, he often left the house as part of his daily activities and the ALJ used this testimony in evaluating the medical record evidence and formulating Plaintiff's RFC.  (ECF No. 4-1. PageID.33-37).

Because the ALJ's weighing of opinion evidence and subjective symptom evaluation are supported by substantial evidence, his decision should be affirmed.

## VI.    Conclusion

In the end, Plaintiff suffers from impairments that affect his daily living, as the ALJ found.  But his impairments do not rise to the level of precluding Plaintiff from performing work consistent with the RFC crafted by the ALJ.  Substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

Accordingly, for the reasons stated above, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment, (ECF No. 8), be **DENIED**; the Commissioner's motion for summary judgment, (ECF No. 10), be **GRANTED**; and the ALJ's decision be **AFFIRMED**.

Dated: July 9, 2024                          s/Kimberly G. Altman
Detroit, Michigan                            KIMBERLY G. ALTMAN
                                             United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 9, 2024.

<u>s/Carolyn Ciesla</u>
CAROLYN CIESLA
Case Manager